UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

AARON WILLEY,

                          Plaintiff,                  No. 07-CV-6484 CJS

    -vs-

                                                   DECISION AND ORDER

ROBERT KIRKPATRICK, et al.,

                          Defendants.
_____

APPEARANCES

| | |
|---|---|
| For Plaintiff: | Aaron Willey, *pro se* |
| | 04-A-2068 |
| | Five Points Correctional Facility |
| | Box 119 |
| | Romulus, New York 14541 |
| For Defendants: | Emil J. Bove, Jr., Esq. |
| | *Benjamin A. Bruce, Esq. and Maritza Buitrago, Esq.* |
| | *On the Briefs*[1] |
| | Assistant Attorneys General |
| | Office of the New York State Attorney General |
| | 144 Exchange Boulevard, Suite 200 |
| | Rochester, New York 14614 |

INTRODUCTION

Plaintiff is a prison inmate in the custody of the New York State Department of Correctional Services ("DOCS"), and is suing various DOCS employees pursuant to 42 U.S.C. § 1983 for alleged constitutional violations. Now before the Court are the following applications: 1) a Motion to Dismiss/Motion for Judgment on the Pleadings [#7]

---

[1]Mr. Bruce submitted the brief [#13] on behalf of Jeziorski, and Ms. Buitrago submitted the brief [#17] on behalf of the other defendants. Mr. Bove did not appear in the case until after briefing was completed.

1

by Jeziorski, made pursuant to FRCP 12(b)(6) and 12(c) ; and 2) a Motion to Dismiss [#15] by Kirkpatrick, Monahan, Kerney, Lambert, Roberts, Sztuk, Allessandro, Overhuff, and Schoellkopf, made pursuant to FRCP 12(b)(6). For the reasons that follow, the applications are denied.

BACKGROUND

The following facts are taken from the Complaint and are presumed to be true for purposes of this Decision and Order. At all relevant times, Plaintiff was housed at Wende Correctional Facility ("Wende"), and Defendants were all employed at Wende. Specifically, Robert Kirkpatrick ("Kirkpatrick") was Superintendent at Wende; M. Monahan ("Monahan") was Deputy Superintendent for Security; Martin Kerney ("Kerney") was a Corrections Captain; Scott Lambert ("Lambert") and Jeff Jeziorski ("Jeziorski") were Corrections Sergeants; Taylor Roberts ("Roberts"), M. Sztuk ("Sztuk"), A. Allesandro ("Allesandro"), and M. Overhuff ("Overhuff") were Corrections Officers; and Tom Schoellkopf ("Schoellkopf") was a Hearing Officer.

On October 15, 2005, Lambert and Roberts told plaintiff that if he did not assist them with an investigation into drug smuggling, they would falsely charge him with possessing a shank weapon. Plaintiff refused to cooperate, and Lambert and Roberts issued a false misbehavior report. Plaintiff was subsequently found guilty at a disciplinary hearing, even though he was not given notice or an opportunity to appear at the hearing. On appeal, the conviction was set aside and a new hearing was ordered. At the re-hearing, Kerney "unjustly ejected [Plaintiff] from the [hearing]," and found him guilty of the charge. (Complaint ¶ 28-29). On appeal, the conviction was again set aside.

On November 26, 2005, Sztuk destroyed some of Plaintiff's legal papers, and

2

when Plaintiff complained, he and Allesandro falsely accused Plaintiff of making a threat, and placed a plexi-glass shield on his cell. Allesandro then turned off the water to Plaintiff's cell, so that he could not flush the toilet. Subsequently, Sztuk, Allesandro, Overhuff and Jeziorksi harassed Plaintiff.

On or about November 28, 2005, Sztuk filed a false misbehavior report against Plaintiff, accusing him of making a threat. At the subsequent disciplinary hearing, Plaintiff attempted to use videotape evidence to prove that he did not make a threat. However, he maintains that someone tampered with the surveillance tape to remove the sound and destroy the picture quality. Plaintiff was found guilty and sentenced to ninety days in the Special Housing Unit ("SHU").

On December 18, 2005, Overhuff issued another false misbehavior report against Plaintiff. Monahan placed Plaintiff on a pre-hearing restricted diet, and denied Plaintiff's appeal of that decision. At the disciplinary hearing, Schoellkopf refused to allow Plaintiff to question witnesses and ejected him from the hearing. Schoellkopf found Plaintiff guilty and sentenced him to thirty days in the SHU. Plaintiff appealed and the conviction was reversed.

On August 25, 2006, Plaintiff received another false misbehavior report, although the issuing officer is not identified in the Complaint. (Complaint ¶ 68). At the disciplinary hearing, Schoellkopf "unjustly" found Plaintiff guilty and sentenced him to one hundred-eighty days in the SHU. On September 17, 2006, Plaintiff wrote to Kirkpatrick regarding his continuing "false imprisonment" in SHU, claiming that he had done "nothing wrong." (Complaint Exhibit 16). Plaintiff also described the history of misbehavior reports issued against him, beginning on October 15, 2005. Kirkpatrick responded that he reviewed the

3

"hearing record packet and other related materials and [found] no reason to modify [the] disposition as rendered." (Complaint Exhibit 16). Nevertheless, on appeal, Donald Selsky ("Selsky"), DOCS Director of Special Housing, reduced the sentence.

On November 28, 2006, Plaintiff was charged criminally with Promoting Prison Contraband in the First Degree, which charge arose from the false misbehavior report issued by Lambert and Roberts in October 2005. The criminal charge was subsequently dismissed.

On October 4, 2007, Plaintiff commenced this action. The Complaint alleges that Defendants acted "both individually and in concert," but does not allege any claims against them in their official capacities. The Complaint demands a "declaratory judgment stating that defendants violated [Plaintiff's] constitutional rights," as well as compensatory and punitive damages.

On March 26, 2008, Jeziorski filed the subject motion [#7], "for an order pursuant to Rules 12(b)(6) 12(c) of the Federal Rules of Civil Procedure." Since Jeziorski has not filed an answer to the complaint, the Court will ignore the reference to Rule 12(c) and will construe the application as a motion pursuant to FRCP 12(b)(6). Jeziorski contends that: 1) the Complaint fails to allege any personal involvement by him; 2) the claim against him in his official capacity must be dismissed; 3) Plaintiff cannot obtain a declaratory judgment against him in his official capacity for past conduct; and 4) he is entitled to qualified immunity. (Memo of Law [#13]).

On June 30, 2008, Kirkpatrick, Monahan, Kerney, Lambert, Roberts, Sztuk, Allessandro, Overhuff, and Schoellkopf filed a motion [#15] pursuant to FRCP 12(b)(6). Defendants contend that: 1) the complaint fails to allege personal involvement by

Kirkpatrick; 2) they cannot be held liable under Section 1983 for issuing false misbehavior reports; 3) they cannot be sued in their official capacities; 4) Plaintiff cannot obtain a declaratory judgment against them in their official capacities for past conduct; and 5) they are entitled to qualified immunity. (Memo of Law [#17]).

ANALYSIS

Defendants are moving to dismiss under FRCP 12(b)(6). In deciding such a motion, the Court must

> accept all factual allegations in the complaint as true and draw all reasonable inferences in [the plaintiff's] favor. *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir.2007). To survive a Rule 12[b] motion, [the] "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, --- U.S. ----, 129 S.Ct. 1937, 1949, ---L.Ed.2d ---- (2009) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)).

*Johnson v. Rowley*, 569 F.3d 40, 43-44 (2d Cir. 2009). As to that,

> [a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

*Ashcroft v. Iqbal*, 129 S.Ct. at 1949 (citations omitted). In sum, the facts alleged must "permit the court to infer more than the mere possibility of misconduct." *Id*. at 1950. "Legal conclusions" need not be accepted as true, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. at 1949 (citation omitted). However, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they

5

plausibly give rise to an entitlement to relief." *Id*.

Moreover, since Plaintiff is proceeding *pro se*, the Court is required to construe his submissions liberally, "to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir.1994).

Plaintiff is suing pursuant to 42 U.S.C. § 1983, and the legal principles applicable to such claims are well settled:

> In order to establish individual liability under § 1983, a plaintiff must show (a) that the defendant is a "person" acting "under the color of state law," and (b) that the defendant caused the plaintiff to be deprived of a federal right. See, *e.g., Monroe v. Pape*, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961). Additionally, "[i]n this Circuit personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir.1977).
>
> ***
>
> An individual cannot be held liable for damages under § 1983 "merely because he held a high position of authority," but can be held liable if he was personally involved in the alleged deprivation. *See Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir.1996). Personal involvement can be shown by: evidence that: (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference ... by failing to act on information indicating that unconstitutional acts were occurring. *See Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir.1995).

*Back v. Hastings On Hudson Union Free Sch. Dist.*, 365 F.3d 107, 122, 127 (2d Cir. 2004).

<u>*Personal Involvement by Jeziorski and Kirkpatrick*</u>

Jeziorski and Kirkpatrick maintain that the Complaint fails to allege any personal involvement by them. The Court disagrees. Beginning with Jeziorski, the Complaint states that he supervised Sztuk and Overhuff, "and allowed them to harass plaintiff [including issuing false misbehavior reports (*See*, Complaint ¶ ¶ 34-38, 42, 47, 51-52)],

6

and abdicated his legal duty to stop and prevent above listed defendants from harassing plaintiff; defendant JEFF JEZIORSKI also participated in harassing plaintiff." (Complaint ¶ 42; see also ¶ 88). As for Kirkpatrick, the Complaint alleges that Plaintiff wrote to him about the alleged ongoing constitutional violations, and that he responded but did not remedy the situation. (Complaint ¶ 72, referring to letter to Kirkpatrick dated September 17, 2006 and response from Kirkpatrick dated October 1, 2006; see also, *Id*. at ¶ 91: "Plaintiff sent a letter to defendant KIRKPATRICK. . . and the defendant was aware of my false imprisonment and ongoing harassment, and was deliberately indifferent to my situation."). Specifically, as mentioned earlier, on September 17, 2006, Plaintiff wrote a letter to Kirkpatrick, claiming that he was illegally confined in SHU, even though he had done "nothing wrong," and Kirkpatrick responded that he had reviewed "the hearing record packet and other related materials and f[ou]nd no reason to modify" Plaintiff's sentence. (Complaint, Exhibits 15 & 16). Such allegations are sufficient to allege Jeziorski's and Kirkpatrick's personal involvement at the pleading stage.

*False Misbehavior Reports*

Sztuk, Allessandro, Overhuff, Lambert, and Roberts maintain that they cannot be liable under Section 1983 for issuing false misbehavior reports. In that regard, they cite, *inter alia*, the case of *Boddie v. Schnieder*, 105 F.3d 857, 862 (2d Cir. 1997), which held that, "a prison inmate has no general constitutional right to be free from being falsely accused in a misbehavior report. There must be more, such as retaliation against the prisoner for exercising a constitutional right."(citations omitted).[2]

---

[2]The Court observes, with regard to protected activity, that it is unclear whether there is a constitutional right "not to snitch." *See, Allah V. Juchenwioz*, No. 04-6713-PR, 176 Fed.Appx. 187, 2006 WL 962150 at *2 (2d Cir. Apr. 12, 2006) (Assuming, *arguendo* for purposes of the decision, that an inmate

7

However, retaliation is just one of the two recognized situations in which the issuance of a false misbehavior report may be actionable under Section 1983; the second is where the inmate is denied due process at the disciplinary hearing arising from the misbehavior report. *See, Livingston v. Kelly*, 561 F.Supp.2d 329, 331 (W.D.N.Y. 2008) ("[A]n inmate's allegation that he has been found guilty of false disciplinary charges may support a constitutional claim if he also alleges that he was denied the minimum procedural due process protections guaranteed by the Fourteenth Amendment.") (citations omitted); *see also*, *Parker v. City of New York*, No. 05 Civ. 1803(PKC)(GWG), 2008 WL 110904 at *10 (S.D.N.Y. Jan. 7, 2008) ("An inmate has no constitutionally guaranteed immunity from being falsely accused of conduct which may result in the deprivation of a protected liberty interest. Rather, to maintain an actionable claim against correction officers for filing a false misbehavior report, a plaintiff must be able to show either: (1) that he was disciplined without adequate due process, as a result of the report; or (2) that the report was issued in retaliation for exercising a constitutionally protected right.") (citations and internal quotations omitted).

Here, the Complaint can be construed as alleging both that Defendants issued false misbehavior reports against Plaintiff and that he was denied due process at the disciplinary hearings. (Complaint ¶ ¶ 19-22, 25-29, 45-48, 55-57, 69-70). Although some of the allegations concerning the conduct of the hearings are conclusory, Defendants have not addressed the due process aspect of Plaintiff's false misbehavior report claims. Consequently, the application to dismiss the false misbehavior report claims is denied.

---

has a constitutional right not to become an informant, but adding that "[n]either the Supreme Court nor this Court has ever held that a prisoner enjoys a constitutional right not to become an informant.").

*Official Capacity Claims*

Defendants contend that any claims against them in their official capacities, including the claim for a declaratory judgment for past conduct, must be dismissed. However, as mentioned above, the Complaint does not indicate that Defendants are being sued in their official capacities. Consequently, that portion of Defendants' motions is denied as moot.

*Qualified Immunity*

Defendants maintain that the Complaint should be dismissed on the ground of qualified immunity, since their actions were "objectively reasonable." Qualified immunity is an affirmative defense, and a defendant seeking dismissal on such grounds at the pleading stage faces a "formidable hurdle":

> A public official is entitled to qualified immunity if his actions do not "violate clearly established statutory or constitutional rights of which a reasonable person would have known" or "if it was 'objectively reasonable' for [the public official] to believe that his actions were lawful at the time of the challenged act." *McClellan v. Smith*, 439 F.3d 137, 147 (2d Cir.2006) (internal quotation marks omitted). "[A] qualified immunity defense can be presented in a Rule 12(b)(6) motion, but ... the defense faces a formidable hurdle when advanced on such a motion" and is usually not successful. *McKenna* [*v. Wright*,] 386 F.3d [432,] 434 [(2d Cir. 2004)].

*Field Day, LLC v. County of Suffolk*, 463 F.3d 167, 191-192 (2d Cir. 2006) (citations omitted). Simply put, the defense may be raised on a 12(b)(6) motion only if it "is based on facts appearing on the face of the complaint." *McKenna v. Wright*, 386 F.3d at 436.

Here, Defendants rely on the "objectively reasonable" prong of the qualified immunity defense, but they do not cite any language in the Complaint that would establish that their actions were objectively reasonable. Instead, they state, in conclusory fashion, that "there are no allegations to suggest that any of the defendant[s'] actions

9

were other than objectively reasonable and therefore they are entitled to qualified immunity and cannot be held liable." (Memo of Law [#13] at 8; Memo of Law [#17] at 9).[3]

However, the Complaint alleges, among other things, that Defendants conspired to frame Plaintiff for numerous false disciplinary infractions, falsely convicted him of such infractions at several disciplinary hearings at which he was denied due process, destroyed evidence, confined him in a cell without ventilation or running water, and pursued false criminal charges against him in New York State court, all because he refused to become an informant. Since it is well-settled that the Court must accept Plaintiff's allegations as true for purposes of the pending motions, the application to dismiss based on qualified immunity is denied.

## CONCLUSION

Defendants' applications [#7][#15] are denied. The parties are directed that, within ten days of the date of this Decision and Order, they are to contact the Honorable Marian W. Payson, the United States Magistrate Judge to whom this case is referred for non-dispositive pre-trial matters, to request a new scheduling order.

Dated: Rochester, New York
      October 9, 2009         ENTER:


                                              /s/ Charles J. Siragusa
                                              CHARLES J. SIRAGUSA
                                              United States District Judge

---

[3] One of Defendants' attorneys maintains that Plaintiff has failed "to allege facts to overcome the qualified immunity to which the defendants are entitled." (Buitrago Affirmation ¶ 4). However, it is clear that "complaints need not anticipate and attempt to plead around defenses." *U.S. v. Northern Trust Co.*, 372 F.3d 886, 888 (7th Cir. 2004).