UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

AARON WILLEY,

                  Plaintiff,

        v.

ROBERT A. KIRKPATRICK, et al.,

                Defendants.

_____

<u>DECISION & ORDER</u>

07-CV-6484CJS

       Plaintiff Aaron Willey ("Willey") has filed this lawsuit under 42 U.S.C. § 1983, alleging that defendants subjected him to excessive force, denied him due process and retaliated against him for exercising his constitutional rights.  (Docket ## 1, 60).  Currently pending before this Court is a motion by defendants (Docket # 63) and a cross-motion by Willey (Docket # 67) to extend the discovery deadline.  Additionally, Willey seeks reconsideration of this Court's April 8, 2011 Order granting defendants' motion to compel the production of Willey's mental health records.  (Docket # 83).  Finally, Willey has also filed four motions to compel.  (Docket ## 92, 99, 101, 105).  I address each in turn below.

## I.  <u>Motion to Extend Deadline</u>

       On December 2, 2009, this Court entered a scheduling order setting October 29, 2010 as the deadline for fact discovery and January 31, 2011 as the deadline for dispositive motions.  (Docket # 49).  On January 31, 2011, defendants filed the instant motion to extend the discovery and dispositive motion deadlines on the basis that they had been unable to take

plaintiff's deposition while he was in jail for a parole violation.  (Docket # 63 at ¶ 4).  Although Willey objected to defendants' motion, he also cross-moved for an extension of time to depose the defendants and pursue further discovery after his release from jail.  (Docket # 67).

Rule 16(b) of the Federal Rules of Civil Procedure provides that "[a] schedule may be modified only for good cause and with the judge's consent."  Fed. R. Civ. P. 16(b)(4). Willey's objection to defendants' motion notwithstanding, both parties have shown good cause for an extension of the discovery deadline.  Accordingly, defendants' motion and plaintiff's cross-motion for an extension of time are granted.  An amended scheduling order will issue separately.

## II.  Motion for Reconsideration

### A.  Background

On February 18, 2011, defendants filed a motion to compel the production of Willey's mental health records from January 1, 2004 to the present.  (Docket # 69).  This Court issued a motion scheduling order providing Willey until March 11, 2011 to respond to the motion.  (Docket # 71).  Believing that Willey had not responded, on April 8, 2011, this Court granted defendants' motion to compel.  (Docket # 77).  On April 28, 2011, Willey moved for reconsideration of that decision on the grounds that his mental health records are privileged and confidential and that the time period for which defendants seek the records is overbroad. (Docket # 83).  In addition, Willey attached to his motion a copy of a document he filed with this Court on February 18, 2011 – the same day that the Court issued its motion scheduling order – objecting to the production of his mental health records.  (*Id*. at 5; Docket # 67 at 3).

"The standard for granting [a motion to reconsider] is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked – matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995) (citations omitted).  Here, the Court granted defendants' motion to compel the production of Willey's mental health records on the basis that he had failed to respond.  Willey has demonstrated, however, that this Court failed to consider his objection, which he had earlier filed.[1]  Accordingly, this Court grants Willey's motion for reconsideration and must now determine whether Willey should be required to produce his mental health records.

Willey's complaint alleges that defendants' actions caused him to suffer a nervous breakdown and develop a mental illness, leading to Willey's confinement in a psychiatric hospital.  (Docket # 60 at ¶ 90).  Specifically, Willey alleges that he was housed in an observation cell at Wende Correctional Facility between February 10 and February 24, 2006. (Docket # 83 at 2).  Thereafter, he was sent to the Central New York Psychiatric Center and did not return to Wende until July 28, 2006.  (*Id*.).  Willey contends that defendants are thus entitled to his mental health records only from February 10, 2006 through July 28, 2006.  (*Id*.).  Willey further contends that some of those records are irrelevant to his claims because they are not related to the emotional distress allegedly caused by defendants.  (*Id*.).  Defendants, however, contend that Willey's mental health records from January 1, 2004 to the present are relevant and necessary in order to properly defend against his allegations.  (Docket # 84).

---

[1]  Willey's objection is also attached to defendants' motion to compel.  (Docket # 69 at 12).

3

### B. Analysis

The threshold requirement of discoverability under the Federal Rules of Civil Procedure is whether the information sought is "relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). To be discoverable, the information "need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Id*. The relevance standard is commonly recognized as one that is necessarily broad in scope in order "to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (citation omitted). *See Daval Steel Prods., a Div. of Francosteel Corp. v. M/V Fakredine*, 951 F.2d 1357, 1367 (2d Cir. 1991) (parties entitled to discovery of any matter that appears "reasonably calculated to lead to the discovery of admissible evidence").

"[C]onfidential communications between a licensed psychotherapist and her patients in the course of diagnosis or treatment are protected from compelled disclosure under Rule 501 of the Federal Rules of Evidence." *Jaffee v. Redmond*, 518 U.S. 1, 15 (1996). Rule 501 provides in relevant part:

> [T]he privilege of a witness, person, government, State, or political subdivision thereof shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience.

Fed. R. Evid. 501. Thus, the privilege protects against compelled testimony concerning conversations between the patient and the licensed therapist, as well as compelled disclosure of notes taken during their counseling sessions. *Jaffee v. Redmond*, 518 U.S. at 18. According to the Supreme Court, the psychotherapist-patient privilege "is 'rooted in the imperative need for

4

confidence and trust.'"  *Id*. at 10 (quoting *Trammel v. United States*, 445 U.S. 40, 51 (1980)).  As

the Court reasoned, "the mere possibility of disclosure [of confidential communications made

during counseling sessions] may impede development of the confidential relationship necessary

for successful treatment" of the "sensitive . . . problems for which individuals consult

psychotherapists."  *Id*.  Thus, the psychotherapist privilege may be regarded as an absolute

privilege.  *In re Consol. RNC Cases*, 2009 WL 130178, *5 (S.D.N.Y. 2009).  Nevertheless,

"[l]ike other testimonial privileges, the patient may of course waive the protection" of the

psychotherapist privilege.  *Jaffee*, 518 U.S. at 15 n.14.

   A plaintiff does not waive the privilege by alleging only "garden variety"

emotional distress.  *See*, *e.g.*, *In re Sims*, 534 F.3d 117, 134, 141 (2d Cir. 2008) (*pro se* prisoner

did not waive his psychotherapist-patient privilege by asserting a garden variety claim for

emotional distress); *Kunstler v. City of New York*, 2006 WL 2516625, *9 (S.D.N.Y. 2006)

(rejecting "the notion that a plaintiff's demand for emotional-distress damages necessarily

triggers a waiver of the privilege for her psychotherapy records"), *adopting report and

recommendation*, 242 F.R.D. 261, 264 (S.D.N.Y. 2007); *Rulhmann v. Ulster Cnty. Dep't of Soc.

Servs.*, 194 F.R.D. 445, 450-51 (N.D.N.Y. 2000).  Garden variety claims refer to claims for

"compensation for nothing more than the distress that any healthy, well-adjusted person would

likely feel as a result of being so victimized"; claims for serious distress refer to claims for "the

inducement or aggravation of a diagnosable dysfunction or equivalent injury."  *Kunstler v. City

of New York*, 2006 WL 2516625 at *7, 9.  Thus, courts must distinguish between garden variety

claims and claims for more "severe" emotional distress, such as those involving a diagnosis of a

specific psychiatric disorder.  *Cf. EEOC v. Grief Bros. Corp.*, 218 F.R.D. 59, 61-62 (W.D.N.Y.

2003) (plaintiff placed his emotional condition in issue by claiming to have suffered severe

depression and serious emotional distress as a result of the alleged harassment and seeking

damages for costs of medical treatment); *Sidor v. Reno*, 1998 WL 164823, *2 (S.D.N.Y. 1998)

(plaintiff's challenges to employer's justification for termination – that plaintiff was a danger to

herself and others – placed her mental state in issue); *see Kunstler*, 2006 WL 2516625 at *7

(collecting cases).

   Here, Willey's allegations that defendants' conduct resulted in mental illness,

commitment to a psychiatric institution and prescribed medication constitute far more than a

garden variety claim for emotional distress and squarely place his mental condition at issue.

Willey cannot make these serious allegations and, at the same time, assert the

psychotherapist-patient privilege as a shield to prevent the disclosure of his records and

defendants from testing his theory.  *In re Sims*, 534 F.3d at 132 (waiver implied in interests of

fairness where party uses privilege as both as "a shield and sword").  Accordingly, I find that

Willey must disclose his mental health records, unless he wishes to withdraw his claims for

emotional distress and instead seek garden variety damages.  Should Willey wish to do so, he

must notify this Court by no later than **October 14, 2011** of his wish to allege only garden variety

claims of emotional distress.

   In the event that Willey does not withdraw his claims, I next address the relevant

time period.  Defendants request Willey's records from January 1, 2004 to the present.  This

represents a time period of nearly eight years and is overbroad considering the sensitive nature of

and special consideration given to mental health records.  However, Willey's suggested period is

too limited; defendants are entitled to discover whether Willey presented mental health issues

6

prior to the events alleged in the complaint.  A review of the record reveals that defendants

originally requested that Willey release records from October 15, 2005, the date on which the

events alleged in Willey's complaint commence.  (Docket # 69, Ex. A).  The last date of the

events recounted in Willey's complaint is April 3, 2007.  (Docket # 60 at ¶ 80).  Accordingly, I

find that the relevant time period covers October 15, 2005 to April 3, 2007.  Defendants are

directed to send to Willey an authorization form consenting to the release of his mental health

records from that period.  Willey is directed to sign and return the release by no later than

**October 14, 2011**, unless he chooses to waive his claim and assert only garden variety emotional

distress.

Accordingly, upon reconsideration, I grant in part and deny in part defendants'

motion to compel.  I turn next to Willey's motions to compel.


## III.   Motions to Compel

### A.   Lambert and Roberts (Docket # 92)

In response to this motion, defense counsel has filed an affirmation stating that

two of the items Willey requested have been produced: specifically, an unredacted list of inmates

who were locked on the B-7 gallery on October 15, 2005 and a cassette tape of a disciplinary

hearing.  (Docket # 104 at ¶¶ 6-7).  Accordingly, Willey's motion to compel these items is denied

as moot, leaving only Willey's requests for defendants Lambert's and Roberts' disciplinary files

and a recreation yard log for B-Block for October 15, 2005.  (Docket # 92 at 3-4).

As to the disciplinary files, both defendants have represented that no documents in

their files relate "to discipline for truth or veracity or use of excessive . . . force."  (Docket # 104

7

at ¶ 8).  I reject Willey's contention that he is entitled to view defendants' entire disciplinary files on the basis that their records will reveal that defendant Superintendent Kirkpatrick should not have hired them.  (Docket # 92 at 5).  Those claims are not presented by this lawsuit.  (*See* Docket # 60).  Accordingly, because defendants have represented that their disciplinary files contain no documents relating to discipline for lack of veracity or use of force, this Court finds no basis upon which to grant the motion to compel.

Similarly, defense counsel has represented that the requested recreation yard log for 2005 "is unavailable because facility staff did not retain such list(s) more than a month [*sic*] and it was not entered into the block logbook."  (*Id*. at ¶ 9).  Because a court has no authority to order the production of that which no longer exists, Willey's motion to compel the B-Block recreation yard log must be denied.

### B.  Allessandro, Jeszorski and Sztuk (Docket # 99)

Willey's second motion to compel seeks several documents and items from defendants Allessandro, Jeszorski and Sztuk.  (Docket # 99).  First, Willey seeks DOCS's policy relating to the use of a "cell shield"; defendants have responded by providing DOCS Directive 4933 governing the use of cell shields.  (*Id*. at 1; Docket # 104 at ¶ 11).  Willey seeks any other documents regarding the justification for using cell shields.  (Docket # 99 at 1-2).  Defendants have not addressed whether any other policies or memoranda exist related to the use of cell shields.  Accordingly, defendants shall supplement their response and state whether any further documents exist, and if so, produce them by no later than **October 14, 2011**.

Second, Willey seeks an unredacted copy of the 2006 DOCS employee handbook. (Docket # 99 at 2).  Defendants object on the grounds that it is irrelevant to Willey's claims and

that disclosure of the handbook to an inmate presents a potential security risk.  (Docket # 104 at ¶¶ 12-13).  Willey has not articulated how the unredacted employee handbook is relevant to his claims, stating only that there are no rules prohibiting him from obtaining it.  (Docket # 99 at 2).  In the absence of a showing of relevance, Willey's motion to compel the unredacted employee handbook is denied.

Third, Willey seeks a November 28, 2005 videotape that was apparently reviewed during a disciplinary hearing, and which he claims was damaged or tampered with, and requests that defendants produce a forensic report concerning the videotape's condition.  (*Id.* at 2, 3-4).  Defendants have represented that the videotape is not within their custody or control; however, defendants do not dispute that the videotape exists or was reviewed at the hearing.  Accordingly, defendants are directed to supplement their response by no later than **October 14, 2011**, to indicate if the videotape was ever in their possession, and if so, the circumstances of its destruction; defendants are also directed to disclose their knowledge of the videotape's current condition and location.  Willey's request for a forensic report regarding the videotape is denied on the basis that defendants are not required to create documents not already within their possession, custody or control.  *See* Fed. R. Civ. P. 34.

As for Willey's request for defendants Allessandro's, Jeszorski's and Sztuk's disciplinary files, defense counsel has represented that none exist for Allessandro and Jeszorski and that he was awaiting a response from Sztuk.  (Docket # 104 at ¶ 15).  Defendants do not otherwise object to producing Sztuk's disciplinary file; accordingly, Sztuk shall be required to supplement his discovery responses and produce his disciplinary file, should one exist, by no later than **October 14, 2011**.

9

Finally, defendants object to Willey's request for all inmate grievances against Allessandro and Sztuk as overbroad and burdensome.  (Docket ## 99 at 3, 4; 104 at ¶ 16).  Specifically, defendants contend that such a request requires a search of all inmate files to determine whether either defendant was named in a grievance.  (Docket # 104 at ¶ 16).  As this Court has previously held, the burden of searching all inmates' files for grievances against specific defendants is unduly burdensome.  *Melendez v. Falls*, 2010 WL 811337, *4 (W.D.N.Y. 2010).  Accordingly, Willey's motion to compel the production of grievances is denied.

## C. **Kearney and Schoelkopf (Docket # 101)**

Willey's motion to compel with respect to defendants Kearney and Schoelkopf must be denied.  Specifically, Willey seeks defendants' disciplinary records, which defendants represent do not exist.  (Docket # 104 at ¶ 19).  Second, Willey's request for copies of all hearing decisions by defendants that were ever reversed (Docket # 101 at 1) is overbroad and not relevant to his claims.  Finally, Willey has not demonstrated that his request for defendants' annual salary and wages is relevant to his claims.[2]

## D. **Kirkpatrick (Docket # 105)**

Finally, Willey's motion to compel Kirkpatrick's response to his March 25, 2011 request for production (Docket # 73) is denied as moot, as the record reveals that Kirkpatrick responded on July 22, 2011 (Docket # 109).  Willey must file another motion to compel if he finds any of Kirkpatrick's responses inadequate.

---

[2]  Willey contends that defendants' "financial status" is relevant to punitive damages (Docket # 101 at 2).  Should the question of punitive damages be presented to the jury, plaintiff is free to renew his request for information concerning defendants' financial status.

## CONCLUSION

For the reasons stated above, defendants' motion **(Docket # 63)** and plaintiff's cross-motion **(Docket # 67)** for an extension of time to conduct discovery are **GRANTED.** Plaintiff's motion for reconsideration of my April 8, 2011 order **(Docket # 83)** is **GRANTED**, and defendants' motion to compel **(Docket # 69)** is **GRANTED in PART** and **DENIED in PART** as set forth herein.  Plaintiff's motions to compel **(Docket ## 92, 101, 105)** are **DENIED**. Plaintiff's motion to compel **(Docket # 99)** is **GRANTED in PART** and **DENIED in PART**. Defendants shall supplement their production as outlined above by no later than **October 14, 2011**.

**IT IS SO ORDERED.**

_s/Marian W. Payson_
MARIAN W. PAYSON
United States Magistrate Judge

Dated: Rochester, New York
September   19  , 2011

11