UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

AARON WILLEY,

                    Plaintiff,              **No. 07-CV-6484(MAT)**

        -vs-                               **DECISION AND ORDER**

ROBERT KIRKPATRICK, et al.,

                    Defendants.

## I.    Introduction

On October 4, 2007, pro se plaintiff Aaron Willey ("Willey" or
"Plaintiff") instituted this action pursuant to 42 U.S.C. § 1983
against Defendants, alleging that they violated his constitutional
rights while he was an inmate in the custody of the New York State
Department of Corrections and Community Supervision ("DOCCS"). The
Complaint alleges that Defendants acted "both individually and in
concert," but does not allege any claims against them in their
official capacities. The Complaint demands a "declaratory judgment
stating that Defendants violated [Plaintiff's] constitutional
rights," as well as compensatory and punitive damages. Plaintiff
was granted permission to file an amended complaint (Dkt #60),
which is the operative pleading in this action.

Defendants Robert A. Kirkpatrick, M. Monahan, Martin Kearney,
Scott Lambert, Taylor Roberts, M. Sztuk, A. Allessandro,
M. Overhuff, and Tom Schoellkopf have moved for summary judgment
dismissing the complaint pursuant to Federal Rules of Civil
Procedure 56. Plaintiff has opposed the motion and renewed his
request for the appointment of counsel.

For the reasons discussed herein, Defendants' motion for summary judgment is granted, and the amended complaint is dismissed.

## II.  Background

### A.    The Parties

At all relevant times, Plaintiff was housed at Wende Correctional Facility ("Wende"), and Defendants were all employed at Wende. Specifically, Robert Kirkpatrick ("Supt. Kirkpatrick") was Superintendent at Wende; M. Monahan ("DSS Monahan") was Deputy Superintendent for Security; Martin Kearney ("Capt. Kearney") was a Corrections Captain; Scott Lambert ("Sgt. Lambert") and Jeff Jeziorski ("Sgt. Jeziorski") were Corrections Sergeants; Taylor Roberts ("C.O. Roberts"), M. Sztuk ("Sztuk"), A. Allesandro ("C.O. Allesandro"), and M. Overhuff ("C.O. Overhuff") were Corrections Officers; and Tom Schoellkopf ("H.O. Schoellkopf") was a Hearing Officer.

### B.    Factual Summary

The recitation of facts below is drawn from the pleadings and discovery documents on file in this matter. The Court has viewed the facts in the light most favorable to Plaintiff, as the party opposing summary judgment. See, e.g., United States v. Diebold, Inc., 369 U.S. 654, 655 (1962) (In determining whether a genuine issue exists as to a material fact, the court must view underlying

facts contained in affidavits, attached exhibits, and depositions in the light most favorable to the non-moving party.).

### 1. The October 2005 False Misbehavior Report for Possessing a Weapon

On October 15, 2005, Sgt. Lambert and C.O. Roberts detained Willey and frisked him for no apparent reason. They brought him to a small room without a surveillance camera and questioned him about an inmate they suspected of smuggling contraband into Wende. Sgt. Lambert opened a desk drawer and pulled out what appeared to be a metal weapon and said that if he did not work with them as an informant, they would falsely charge him with possessing a weapon. Plaintiff refused to cooperate, stating that he did not have any knowledge of the alleged smuggling. Sgt. Lambert responded, "Have it your way," and brought Willey back to his cell.

On October 17, 2005, while Willey was undergoing a pat-frisk before attending yard recreation, C.O. Roberts allegedly uncovered a flat piece of metal about four inches long and three-quarters of an inch wide secreted near his crotch area. C.O. Roberts issued a disciplinary report charging Plaintiff with Possession of a Weapon and Possession of Contraband (PR 110.13 and 110.23). Willey was subsequently found guilty at a disciplinary hearing, even though he was not given notice or an opportunity to appear at the hearing.

On appeal, the conviction was set aside and a new hearing was ordered. At the hearing before Capt. Kearney on December 28, 2005, Plaintiff alleges that he was denied the right to call inmate

witnesses and was unjustly removed from the hearing. He states that Capt. Kearney threatened to "beat the shit out of" him and called him a "young punk." According to Capt. Kearney, Willey's removal from the hearing was warranted because he refused to stop interrupting Capt. Kearney and attempting to place irrelevant matters on the record. Capt. Kearney found Willey guilty of both charges, and imposed 180 days in the Special Housing Unit ("SHU"), 180 days of lost privileges, and 12 months recommended loss of good time credits. On appeal, the conviction was set aside by Special Housing Unit Director Donald Selsky ("SHU Director Selsky") on February 28, 2006.[1]

## 2. The November 2005 False Misbehavior Report

On November 26, 2005, C.O. Sztuk and C.O. Alessandro escorted Willey to the shower. When Willey returned, he found that his cell had been "trashed"–the toilet had been flooded, and Willey's papers and belongings were strewn about his cell. When Willey asked C.O. Sztuk for a "search contraband slip," Sztuk replied, "You really like fucking with me." Willey responded, "What?" C.O. Sztuk said, "You heard me, keep fucking with me asshole and see what happens."

---

[1]
On November 28, 2006, Plaintiff was charged criminally with Promoting Prison Contraband in the First Degree, based upon the false misbehavior report issued by C.O. Roberts in October 2005, regarding Plaintiff's possession of a shank-type weapon. This charge was subsequently dismissed, however, by Alden Town Court Justice LaDuca.

Inmates housed nearby confirmed that they had seen C.O. Sztuk carrying Willey's legal paperwork out of his cell after the cell search. Willey yelled out and asked to speak to an area supervisor. He was told to "give it a rest," to which he replied that he would not give it a rest because they had stolen his legal paperwork. At that point, C.O. Sztuk said, "What's that, Willey, you said you are going to shit us down (i.e., throw feces and/or urine on corrections officers)?" Willey denied saying anything like that.

Nevertheless, he was moved to the restricted side of the SHU where a Plexiglas shield was placed on his cell. C.O. Allesandro then turned off the water to Plaintiff's cell, so that he could not flush the toilet. As a result, feces and urine accumulated in the bowl and made the air in the cell noxious. Willey alleges that the area supervisor, Sgt. Jeziorski, failed to properly supervise C.O. Allessandro and C.O. Sztuk.

On or about November 28, 2005, C.O. Sztuk filed a false misbehavior report against Plaintiff, accusing him of threatening to "shit down" staff members. At the subsequent disciplinary hearing on December 7, 2005, before Susan Post (not a defendant in this action), Willey attempted to use videotape evidence to prove that he did not make such threat. However, according to Willey, someone had tampered with the surveillance tape to remove the sound and destroy the picture quality. Willey was found guilty and

sentenced to 90 days in the SHU. On appeal, the charge was affirmed by SHU Director Selsky.

### 3. The December 2005 False Misbehavior Report

On December 18, 2005, Willey placed the garbage from his evening meal on his feed-up tray to be picked up. However, C.O. Overhuff refused to remove the refuse, and issued another false misbehavior report against Plaintiff for refusing a direct order (namely, to turn in his food tray) in violation of Prison Rule 106.10. According to C.O. Overhuff, he told Willey to hand him tray, and Willey instead began to break his garbage in pieces; C.O. Overhuff reiterated the order, and Willey again allegedly refused.

D.S.S. Monahan placed Willey on a pre-hearing restricted diet, and, on December 20, 2005, denied Willey's appeal of that decision.

At the disciplinary hearing conducted on January 10, 2006, with regard to the December 18, 2005 incident, H.O. Schoellkopf refused to allow Willey to question witnesses and ejected him from the hearing. According to Willey, H.O. Schoellkopf told him, "You are going to die in the SHU, you young punk." H.O. Schoellkopf found Willey guilty and sentenced him to 30 days in the SHU, 30 days of lost privileges and two months of recommended loss of good time credits. On February 28, 2006, the conviction was reversed on appeal by SHU Director Selsky, who found that Willey "was inappropriately removed from the hearing."

### 4.   Harassment by Corrections Officers and Plaintiff's Suicide Attempt

Willey states that while he was housed in the SHU, he was subjected to continuous verbal harassment by numerous corrections officers, especially C.O. Allesandro. According to Willey, C.O. Allessandro made sexually harassing comments and, while Willey was showering, would stare at him licking his lips and blowing kisses. As a result, Willey became severely depressed and attempted to overdose on ibuprofen on February 9, 2006. He was taken to Erie County Medical Center and, upon his return to Wende, was placed in an observation cell he describes as filthy and reeking of urine and feces. Willey was left there, naked, for fourteen days. At that point, he was involuntary committed to the Central New York Psychiatric Center, where he stayed for six months.

While there, Willey states that he was attacked by deranged, violent patients; strapped down to a gurney; and injected with potent psychotropic drugs against his will.

After his stint at the Psychiatric Center, he was returned to the Wende SHU.

### 5.   The August 2006 False Misbehavior Report

On August 25, 2006, Willey received another misbehavior report for allegedly kicking a corrections officer while he was in restraints on February 10, 2006, the day after his suicide attempt. The issuing officer is not identified in the Complaint.

At the disciplinary hearing, H.O. Schoellkopf found Willey guilty and sentenced him to 180 days in the SHU. On September 17, 2006, Plaintiff wrote to Supt. Kirkpatrick regarding his continuing "false imprisonment" in SHU, claiming that he had done "nothing wrong." Willey also described the history of false misbehavior reports issued against him, beginning on October 15, 2005. Supt. Kirkpatrick responded that based on his review of the "hearing record packet and other related materials," he found "no reason to modify [the] disposition as rendered." Nevertheless, on appeal, SHU Director Selsky reduced the sentence in connection with the August 2006 misbehavior report.

## III. General Legal Principles

### A. Summary Judgment Standard

The standard for granting summary judgment is well established. Summary judgment may not be granted unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). A party seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970). "[T]he movant must make a prima facie showing that the standard for obtaining summary judgment has been satisfied." 11 Moore's Federal Practice,

§ 56.11[1][a] (Matthew Bender 3d ed.). Where the non-moving party will bear the burden of proof at trial, the movant may meet its burden by showing the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

Once the initial burden has been met by the movant, the non-moving party is required demonstrate that, as to a material fact, a genuine issue exists. Fed. R. Civ. P. 56(e); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). "A fact is 'material' only if the fact has some effect on the outcome of the suit." Catanzaro v. Weiden, 140 F.3d 91, 93 (2d Cir. 1998)(citing Anderson, 477 U.S. at 248). A dispute regarding a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248.

The court must draw all reasonable inferences, and resolve all ambiguities, in favor of the party opposing summary judgment. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). However, the party opposing summary judgment "may not create an issue of fact by submitting an affidavit in opposition to a summary judgment motion that, by omission or addition, contradicts the affiant's previous deposition testimony."

<u>Hayes v. New York City, Dept. of Corr.</u>, 84 F.3d 614, 619 (2d Cir. 1996) (citations omitted).

Although a court must read a <u>pro se</u> litigant's papers liberally, interpreting them "to raise the strongest arguments that they suggest," <u>Burgos v. Hopkins</u>, 14 F.3d 787, 790 (2d Cir. 1994), when alleging a violation of a civil rights statute, even a <u>pro se</u> litigant must make "specific allegations of fact indicating a deprivation of rights, instead of a litany of general conclusions that shock but have no meaning." <u>Barr v. Adams</u>, 810 F.2d 358, 363 (2d Cir. 1987).

## B.    42 U.S.C. § 1983

To prevail in a Section 1983 action, a plaintiff must demonstrate that he has been denied a constitutional or federal statutory right and that the deprivation occurred under color of state law. 42 U.S.C. § 1983; <u>see also</u>, <u>e.g.</u>, <u>West v. Atkins</u>, 487 U.S. 42, 48 (1988); <u>Graham v. Henderson</u>, 89 F.3d 75, 79 (2d Cir. 1996). Section 1983 itself, however, "creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere." <u>Sykes v. James</u>, 13 F.3d 515, 519 (2d Cir. 1993) (citation omitted), <u>cert. denied</u>, 512 U.S. 1240 (1994).

"It is well settled in this Circuit that 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'" <u>Wright v.</u>

<u>Smith</u>, 21 F.3d 496, 501 (2d Cir. 1994). The personal involvement of a supervisory defendant may be shown by evidence that, <u>inter alia</u>, the "the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong . . . or . . . the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring." <u>Colon v. Coughlin</u>, 58 F.3d 865, 873 (2d Cir. 1995)[2] (citing <u>Wright</u>, 21 F.3d at 501 (citing <u>Williams v. Smith</u>, 781 F.2d 319, 323-24 (2d Cir. 1986))).

## IV. Analysis

### A. Issuance of False Misbehavior Reports in Retaliation For Plaintiff's Refusal to Act as an Informant

The filing of baseless or false charges against an inmate does not, in and of itself, give rise to a constitutional violation. <u>Freeman v. Rideout</u>, 808 F.2d 949, 951 (2d Cir. 1986) (An inmate "has no constitutionally guaranteed immunity from being falsely accused of conduct which may result in the deprivation of a protected liberty interest."). Rather, to maintain an actionable claim against correction officers for filing a false misbehavior report, the inmate must be able to show either (1) that he was

_____

[2]

     In <u>Colon</u>, the Second Circuit affirmed summary judgment for Commissioner of DOCCS and the facility superintendent on the grounds that, <u>inter alia</u>, the contents of the inmate's letters to them was not in the record and therefore the court did not know "whether the letter was one that reasonably should have prompted [defendants] to investigate." 58 F.3d at 873, 874 n.8.

disciplined without adequate due process as a result of the report; or (2) that the report was issued in retaliation for exercising a constitutionally protected right. See <u>Freeman</u>, 808 F.2d at 951-53 (reasoning that the filing of false charges is not a constitutional violation, as long as the prisoner is granted a hearing and given an opportunity to rebut the charges); <u>Franco v. Kelly</u>, 854 F.2d 584, 589-90 (2d Cir. 1988) (reversing grant of summary judgment where prisoner claimed that false disciplinary charges were filed against him as retaliation for his cooperation with a state investigation into alleged inmate abuse).

Here, Willey has not alleged that the misbehavior reports were issued in retaliation for his exercise of a constitutionally protected right. However, the Complaint can be construed as alleging that certain defendants issued false misbehavior reports against Plaintiff and that the defendants acting as hearing officers denied him of due process at the related disciplinary hearings. See Complaint ¶ ¶ 19-22, 25-29, 45-48, 55-57, 69-70. In particular, Willey complains that both H.O. Kearney and H.O. Schoellkopf unlawfully ordered him removed from various disciplinary hearings stemming from the false misbehavior reports issued by C.O. Sztuk and C.O. Roberts.

Under New York State regulations, an inmate has the right to "be present at the hearing unless he refuses to attend, or is excluded for reason of institutional safety or correctional goals."

N.Y. COMP. CODES R. & REGS., tit. 7, § 254.6. Although an inmate may bring a successful New York Civil Practice Law and Rules ("C.P.L.R.") Article 78 proceeding pursuant to this regulation, a claim under state law does not necessarily provide a viable due process claim under 42 U.S.C. § 1983.

Here, New York has provided inmates with a procedural safeguard at their disciplinary hearings–the right to be personally present–above and beyond that which is required by the federal Constitution. See Wolff v. McDonnell, 418 U.S. 539 (1974) (ruling that inmates accused of disciplinary violations be afforded certain procedures, including 24-hours notice, the right to call—but not necessarily to be present during the testimony of—witnesses, and an impartial tribunal); Francis v. Coughlin, 891 F.2d 43 (2d Cir. 1989). " A procedural safeguard does not constitute a liberty interest[.]" Dawes v. Leonardo, 885 F. Supp. 375, 378 (N.D.N.Y. 1995)(citing Patterson v. Coughlin, 761 F.2d 886, 892 (2d Cir. 1985) (noting how the court below had "apparently confuse[d] the deprivation of a liberty interest with the denial of the constitutional right to procedural safeguards which is implicated by that interest"), cert. denied, 474 U.S. 1100 (1986)). "[W]here that safeguard is not required by the United States Constitution's Due Process Clause, its denial cannot constitute a violation of that clause[.]" Id. (citing Patterson, 761 F.2d at 892 (finding a section 1983 action permissible where the disciplinary hearing in

-13-

question violated state procedural requirements simultaneously violated federal due process mandates)). Thus, although it was violative of Willey's state regulatory rights to be excluded from the hearing, his federal constitutional rights were not violated thereby. Accordingly, his retaliation claim premised on a subsequent federal due process violation must fail. See, e.g., Livingston v. Kelly, 561 F. Supp.2d 329, 331 (W.D.N.Y. 2008) ("[A]n inmate's allegation that he has been found guilty of false disciplinary charges may support a constitutional claim if he also alleges that he was denied the minimum procedural due process protections guaranteed by the Fourteenth Amendment.") (citations omitted).

B.   **Destruction of Personal Property**

Willey alleges that C.O. Sztuk and C.O. Allessandro stole legal documents from his cell, and destroyed his personal property (e.g., family photographs and letters). Under Hudson v. Palmer, 468 U.S. 517, 536 (1984), even the intentional destruction of an inmate's property by a prison officer does not violate the Due Process Clause if the state provides that inmate with an adequate post-deprivation remedy. While the loss of property is regrettable, and even though Willey has alleged that these defendants were personally responsible for the loss, he has not stated an actionable constitutional claim because New York state law provides him with an adequate post-deprivation remedy, i.e., § 9 of the

Court of Claims Act. <u>Reyes v. Koehler</u>, 815 F. Supp. 109, 114 (S.D.N.Y. 1993)(citing <u>Blum v. Koch</u>, 716 F. Supp. 754, 762 (S.D.N.Y. 1989); <u>Friedman v. Young</u>, 702 F. Supp. 433, 437 (S.D.N.Y. 1988); <u>DeYoung v. City of New York</u>, 607 F. Supp. 1040, 1042-43 (S.D.N.Y. 1985)); <u>accord</u>, <u>e.g.</u>, <u>Murchison v. Keane</u>, No. 94 Civ. 466 CSH, 2000 WL 489698, at *6 (S.D.N.Y. Apr. 25, 2000) (citations omitted).

**C. Harassment**

Willey alleges that C.O. Allessandro violated his constitutional rights by subjecting him to continuous harassment, which Willey describes as "psychological, emotional, verbal, and sexual." Willey states that C.O. Allesandro would bang on his cell and turn his light switch on and off rapidly. Also, Willey indicates that C.O. Allesandro would stare at him while he was showering and toweling off, and would make sexually suggestive comments. Willey does not claim that C.O. Allessandro physically touched him in a sexual manner, however.

"Although indefensible and unprofessional, verbal threats or abuse are not sufficient to state a constitutional violation cognizable under § 1983." <u>Jermosen v. Coughlin</u>, 878 F. Supp. 444, 449 (N.D.N.Y. 1995) (citing <u>Patton v. Przybylski</u>, 822 F.2d 697, 700 (7th Cir. 1987) (derogatory remarks do not constitute a constitutional violation); <u>Emmons v. McLaughlin</u>, 874 F.2d 351, 353 (6th Cir. 1989); <u>Oltarzewski v. Ruggiero</u>, 830 F.2d 136, 139 (9th

Cir. 1987); <u>Martin v. Sargent</u>, 780 F.2d 1334, 1338–39 (8th Cir. 1985)). Willey has made no showing of uninvited physical or sexual contact, nor has he pled such a cause of action in his Complaint. C.O. Allesandro's annoying conduct and comments, unaccompanied by physical threats or attacks, do not amount to a constitutional violation under § 1983.

### D. Eighth Amendment Violation Based Upon Unsanitary Conditions

Willey asserts that C.O. Sztuk and C.O. Allessandro violated his Eighth Amendment right to be free from cruel and unusual punishment by turning off the running water to his cell while the Plexiglas cell shield was in place between December 1, 2005, and January 10, 2006. At one point in the Complaint, Willey states that his drinking water and toilet water was shut off for "extensive lengths of time". Compl., ¶ 87 (Dkt #1). In the next sentence, he states that his toilet water was shut off for "seven (7) days, forcing plaintiff to stay in a plexy glass shield (no air circulation) and breathe in air smelling of urine/feces. . . ." <u>Id.</u>

In his response to interrogatories propounded by Willey, C.O. Allessandro denied "purposely shut[ting] [his] toliet [sic] and water pressure off in between" December 1, 2005, and January 10, 2006. Dkt #95 at 3, ¶ 9. However, Defendants failed to address this conditions-of-confinement claim in their motion for summary judgment.

"While the Eighth Amendment's prohibition against cruel and unusual punishment 'does not mandate comfortable prisons,'" <u>Gaston v. Coughlin</u>, 249 F.3d 156, 164 (2d Cir. 2001) (quoting <u>Rhodes v. Chapman</u>, 452 U.S. 337, 349 (1981)), the conditions of confinement must be at least 'humane,'" <u>id.</u> (quoting <u>Farmer v. Brennan</u>, 511 U.S. 825, 832 (1994)). An Eighth Amendment violation based upon living conditions requires the inmate to show (1) a deprivation that is "objectively, sufficiently serious" of "the minimal civilized measure of life's necessities," and (2) a "sufficiently culpable state of mind" on the part of the defendant official, such as deliberate indifference to inmate health or safety. <u>Gaston</u>, 249 F.3d at 164 (quoting <u>Farmer</u>, 511 U.S. at 834)(internal quotation marks omitted in <u>Gaston</u>).

A Section 1983 claim will not lie for prison conditions that are merely unpleasant,, but chronic exposure to human waste will give rise to a colorable claim. <u>See</u> <u>Gaston v. Coughlin</u>, 249 F.3d 165-66. In <u>Gaston</u>, the Second Circuit reinstated an inmate's Eighth Amendment claim against two defendants where the area in front of the inmate's cell "was filled with human feces, urine, and sewage water" for several consecutive days. The Second Circuit stated that it was "unwilling to adopt as a matter of law the principle that it is not cruel and unusual punishment for prison officials knowingly to allow an area to remain filled with sewage and excrement for days on end." <u>Id.</u> at 166. Similarly, in <u>LaReau v. MacDougall</u>, 473

F.2d 974, 977-79 (2d Cir. 1972), the Second Circuit held that an inmate who spent five days in a cell that contained only a grate-covered hole in the floor for a toilet, which could only be flushed from the outside, was deprived of his Eighth Amendment rights. The circuit court observed that "[c]ausing a man to live, eat and perhaps sleep in close confines with his own human waste is too debasing and degrading to be permitted. The indecent conditions that existed in this . . . cell seriously threatened the physical and mental soundness of its unfortunate occupant." Id. at 978; see also Wright v. McMann, 387 F.2d 519, 522, 526 (2d Cir. 1967) (finding 33-day placement of prisoner in strip cell which was "fetid and reeking from the stench of the bodily wastes of previous occupants which . . . covered the floor, the sink, and the toilet," combined with other conditions, violated Eighth Amendment).

Courts outside of the Second Circuit have reached the same result where exposure to sewage lasts for a substantial period of time. See McCord v. Maggio, 927 F.2d 844, 846-47 (5th Cir. 1991) (finding Eighth Amendment violation where inmate lived in cell for two years and slept on floor for months "into which rain water and backed-up sewage leaked"); Williams v. Adams, 935 F.2d 960, 961-62 (8th Cir. 1991) (reversing grant of summary judgment for prison defendants where plaintiff alleged "that the toilet in the cell did not work" and overflowed continuously "and the floor stay[ed] filthy with its wast[e]" over 13-day period); Howard v. Adkison,

887 F.2d 134, 136–38 (8th Cir. 1989) (holding Eighth Amendment violation sufficiently proven where inmate lived for two years in cell where walls, door and food slot "were covered with human waste," mattress was "stained with urine and human waste" and pleas for remedial measures went unanswered); McCray v. Sullivan, 509 F.2d 1332, 1336 (5th Cir. 1975) (finding conditions in isolation cells where inmates lived for as long as 21 days violated Eighth Amendment where waste "frequently" overflowed onto the floors of the cells); Looper v. Sanders, Civil No. 6:10-cv-06037, 2011 WL 861714, at *4-*5, *8 (W.D. Ark. Mar. 10, 2011) (denying defendants' motion for summary judgment where plaintiff was exposed to raw sewage for over 10 months); Jones v. Sanders, No. 08-6035, 2009 WL 2432632, at *7 (W.D. Ark. Aug. 7, 2009) (Report and Recommendation) (recommending denial of defendants' motion for summary judgment where plaintiff was exposed to raw sewage for a month and a half).

"Where an inmate's exposure to waste lasts for three or four days, the Circuits are split." Ortiz v. Department of Correction of City of New York, 2011 WL 2638137 (S.D.N.Y. Apr. 29, 2011) (comparing Smith v. Copeland, 87 F.3d 265, 269 (8th Cir. 1996) (affirming summary judgment for defendants where plaintiff was subjected to an overflowing toilet in his cell for four days), with McBride v. Deer, 240 F.3d 1287, 1291-92 (10th Cir. 2001) (vacating Rule 12(b)(6) dismissal where plaintiff alleged he was forced to live in "feces-covered cell" for three days); Sperow v. Melvin,

No. 96-4219, 182 F.3d 922, 1999 WL 450786, at *1-*3 (7th Cir. June 24, 1999) (unpublished opn.) (reversing Rule 12(b)(6) dismissal where inmate "was subjected to appalling conditions" of waste-filled cell "for three full days"); Young v. Quinlan, 960 F.2d 351, 355-56, 363-65, (3d Cir. 1992), superceded by statute on other grounds as stated in Ghana v. Holland, 226 F.3d 175, 184 (3d Cir. 2000) (reversing summary judgment for defendants where inmate was moved to "dry cell" without working toilet for 96 hours and forced to urinate and defecate in his cell)).

Especially because Willey has adequately pled maliciously wilful conduct by C.O. Allessandro, rather than mere negligence, the alleged shut-off of the running water to Willey's toilet for several days place this case on the borderline between the levels of discomfort to be expected in prison and unacceptable, inhumane conditions. After reviewing the cases cited above, however, the Court concludes that on the particular facts presented here, Willey's conditions-of-confinement claim cannot withstand summary judgment. First, Willey is vague as to the dates that the alleged shut-off occurred, and has made conflicting allegations about the duration ("extensive lengths of time" versus "seven days" versus the time between December 1, 2005, and January 10, 2006). Second, Willey has not claimed that human waste from his toilet overflowed into his cell. See Smith v. United States, No. 9:09-CV-729 (TJM/DRH), 2011 WL 777969 at *2, *11 (N.D.N.Y. Feb. 3, 2011)

(Report and Recommendation) (recommending denial of summary judgment where inmate alleged that officers "refused to flush the toilet or provide the inmates with toilet paper for two weeks," causing overflow of human waste to spill onto cell floor and inmate to become "nauseous and lightheaded from the odor"), adopted by, 2011 WL 776150 (N.D.N.Y. Mar. 1, 2011). Third, Willey has not claimed that he suffered sickness or other ill effects as a result of the malodorous atmosphere caused by the water shut-off. Contrast with Sperow, supra (reversing dismissal of complaint where, after three days of exposure to human feces and urine on the walls and floor, pieces of a mattress on the floor caked with feces and urine, and a dozen plastic food trays with decayed food, plaintiff was had a headache, gastrointestinal and respiratory problems, and was feverish and sweating); Smith, supra (denying summary judgment where inmate alleged that his exposure to raw sewage from overflowing toilet caused sickness and nauseousness).

### E. Imposition of Restricted Diet in Violation of Eighth Amendment and Due Process

Willey asserts that D.S.S. Monahan placed him on a pre-hearing restricted diet for seven days, consisting of a loaf of bread cabbage, in violation of his Eighth Amendment rights. According to Willey, the bread was usually stale and the cabbage usually rotten. Willey also asserts a due process claim in connection with his

request to D.S.S. Monahan to rescind the restricted-diet order during the seven days.

## 1. Eighth Amendment

As stated above, "a prison official violates the Eighth Amendment only when two requirements are met. First, the deprivation must be, objectively, 'sufficiently serious'.... [Second,] a prison official must have a 'sufficiently culpable state of mind.'" <u>Farmer</u>, 511 U.S. at 834.

With respect to the first prong, "under certain circumstances a substantial deprivation of food may well be recognized as being of constitutional dimension." <u>Robles v. Coughlin</u>, 725 F.2d 12, 15-16 (2d Cir. 1983) (citations omitted). For instance, "the Eighth Amendment prohibition against cruel and unusual punishment does require that prisoners be served nutritionally adequate food . . . [that does not] present an immediate danger to health and well being of the inmates who consume it." <u>Id.</u> at 15 (internal quotation marks and citation omitted). With respect to the second prong, a deliberate indifference to inmate health or safety may be shown where a prison official knew a diet was inadequate and likely to inflict pain. <u>See</u> <u>Phelps v. Kapnolas</u>, 308 F.3d 180, 186 (2d Cir. 2002).

Courts in this Circuit routinely have dismissed claims similar to Willey's, finding that the inmate failed to establish that he experienced a sufficiently serious deprivation for purposes of the

Eighth Amendment. See Smith v. Burge, 2006 WL 2805242, at *11 (N.D.N.Y. Sept. 28, 2006) ("Plaintiff does not establish, or even specifically allege, that (1) the food he was served [i.e., a hard loaf of bread and an apple per day] was nutritionally inadequate (e.g., with respect to the total calories it contained, its grams of carbohydrates, protein, fiber, and fat, or its units of vitamins and minerals, etc.), (2) that he was physically unable to eat the food, or (3) that he lost weight during the week in question.") (footnotes omitted) & id., n. 78 (citing, inter alia, McEachin v. McGuinnis, 357 F.3d 197, 199-201 (2d Cir. 2004) (affirming district court's F.R.C.P. 12(b)(6) dismissal of Eighth Amendment claim alleging, inter alia, that inmate was placed on a restricted diet consisting of "loaf" for seven days)).

### 2. Procedural Due Process

To pursue a claim under 42 U.S.C. § 1983 that a defendant deprived him of his constitutional right to due process, a plaintiff must show that he "enjoyed a protected interest, and defendant's deprivation of that interest occurred without due process of law." Taylor v. Rodriquez, 238 F.3d 188, 191 (2d Cir. 2001) (citation omitted). Thus, courts "examine procedural due process questions in two steps: the first asks whether there exists a liberty or property interest which has been interfered with by the State . . . ; the second examines whether the procedures

attendant upon that deprivation were constitutionally sufficient.

. . .” Kentucky Dept. of Corr., 490 U.S. at 460.

Apparently relying on 7 N.Y.C.R.R. § 304.2,[3] Willey asserts

that he was entitled to a hearing before D.S.S. Monahan regarding

his request to be removed from the restricted diet prior to the end

of the seven-day period.

In order to demonstrate the existence of a liberty interest,

the plaintiff must allege facts suggesting that he was subjected to

a deprivation that imposed “an atypical and significant hardship on

the inmate in relation to the ordinary incidents of prison life.”

Sandin v. Conner, 515 U.S. 472, 484 (1995); see also Tellier, 280

F.3d at 80. Willey is hard-pressed to allege or establish such

facts given that the Second Circuit has held that the imposition of

a restricted diet does not impose an “atypical and significant

hardship” on inmates. McEachin v. McGuinnis, 357 F.3d at 200-01

(finding that a seven-day post-hearing restricted diet did not

---

[3]

    Title 7, Section 304.2 of the New York Code of Rules and
Regulations provides, in pertinent part, as follows:

“The superintendent or his designee may issue a written order
placing an inmate reported to have engaged in conduct described in
subdivision (b) of this section [which conduct includes refusing to
obey a direct order to return a food container at the conclusion of
a meal] on a restricted diet for no more than seven days pending
the outcome of the inmate’s superintendent’s hearing. The order
shall briefly state the reason(s) for the imposition of the
restricted diet and contain the following notice to the inmate:
‘You may write to the deputy superintendent of security or his/her
designee to make a statement as to the need for the continued
pre-hearing imposition of the restricted diet.’. . .”

impose an atypical and significant hardship). Indeed, several federal courts "have specifically held that the imposition of a seven-day pre-hearing restricted diet of 'loaf' (imposed without the issuance of a deprivation order or the holding of a hearing during the seven-day period) did not create an atypical and significant hardship for purposes of the Fourteenth Amendment." Smith v. Burge, supra at n.88 (citing Beckford, 151 F. Supp.2d at 208-209, 218-219 & n. 4 (not mentioning 7 N.Y.C.R.R. § 304.2, but granting defendants motion for summary judgment as to plaintiff's due process claims because a seven-day pre-hearing restricted diet did not impose an atypical and significant hardship); Turnboe v. Gundy, 25 Fed. Appx. 292, 293 (6th Cir. 2001) (being placed on a pre-hearing restricted diet consisting of "food loaf" for seven days does not constitute an "atypical and significant hardship" on the inmate in relation to the ordinary incidents of prison life); Thomas v. Virginia, 04-CV-0273, 2005 WL 15517, at *10-11 (W.D. Va. July 28, 2005)). The Court finds the analysis in these cases, especially Smith v. Burge, supra, persuasive. Accordingly, the Court concludes that Willey has failed to establish a procedural due process claim with respect to the seven-day imposition of a restricted diet prior to his disciplinary hearing.

**V.    Conclusion and Orders**

   For the foregoing reasons, Defendants' motion for summary judgment is granted, and the Amended Complaint is dismissed.

Plaintiff's motion for appointment of counsel, asserted in his opposition to Defendants' summary judgment motion, is denied as moot.

Plaintiff is advised that he must file any notice of appeal with the Clerk's Office, United States District Court, Western District of New York, within thirty (30) days of the date of judgment in this action. Requests to proceed on appeal as a poor person must be filed with United States Court of Appeals for the Second Circuit in accordance with the requirements of Rule 24 of the Federal Rules of Appellate Procedure.

**IT IS SO ORDERED.**

S/Michael A. Telesca

HONORABLE MICHAEL A. TELESCA
United States District Judge

DATED:    February 4, 2013
          Rochester, New York